Miami Beach Bay Shore Company, a Corporation v. Commissioner.
Miami Beach Bay Shore Co. v. Commissioner
Docket No. 108392.
United States Tax Court
1944 Tax Ct. Memo LEXIS 236; 3 T.C.M. (CCH) 497; T.C.M. (RIA) 44177; May 26, 1944
*236 John H. Wahl, Jr., Esq., 627 Ingraham Bldg., Miami, Fla., for the petitioner. F. L. Van Haaften, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, Judge: This proceeding has been returned to this Court under a mandate from the United States Circuit Court of Appeals for the Fifth Circuit, reading, in part, as follows: It is now here ordered, adjudged, and decreed by this Court that the decision of the said United States Board of Tax Appeals in this cause be, and the same is hereby, reversed; and that this cause be, and it is hereby, remanded to The Tax Court of the United States for trial anew on both issues (1) when the claimed loss occurred and (2) its basis. In obedience to that mandate the proceeding was set down for further hearing. On motion made in open court and unopposed, the petitioner was granted permission to file an amended petition. The amended petition set up additional facts pleaded as an estoppel. The respondent filed an answer admitting the facts but denying they constituted an estoppel. The petitioner presented no new testimony but offered in evidence the exhibits attached to the amended petition. Pursuant to stipulation the respondent cross-examined two *237 of petitioner's witnesses sworn on the original hearing. Respondent also offered two additional witnesses on the matters set forth in the amended petition. The parties stipulated that the entire record submitted on the original hearing be considered as part of the record on the rehearing. We incorporate herein by reference our previous findings of fact. On the basis of the former record and the further evidence presented on the rehearing, we make the following additional findings of fact: Findings of Fact The petitioner's cost basis for the 100 shares of Peninsula Terminal Corporation stock, which was acquired as 1,000 shares in March 1931, was $500 per share. The basis of the 12 shares of the same stock, acquired by purchase in December 1935, was $1 per share. These shares became worthless during the petitioner's fiscal year ended August 31, 1937. Opinion In our Memorandum Opinion in these proceedings, entered October 17, 1942, we denied the petitioner a loss claimed by reason of the stock of the Peninsula Terminal Corporation (hereinafter called "Terminal") becoming worthless in the fiscal year ending August 31, 1937. We based our denial on the ground that the petitioner failed *238 to overcome the presumption of the correctness of the respondent's determination that the stock had become worthless in a prior year. The second issue, as to petitioner's cost basis, was therefore mooted. Upon reconsideration of the evidence we accede to the view expressed in the opinion of the Circuit Court of Appeals that while the stock had lost the greater part of its value the evidence indicates it had some potential value in the year in question. To permit a loss to be taken because of worthlessness there must be some identifiable event fixing that fact.[1] The evidence establishes that in the year 1936, Terminal was a going concern but in need of operating cash. Efforts were made to secure funds both from without and within the corporation. It was found impossible to secure additional funds unless a reorganization was effected. A petition for reorganization was filed with the court and approved. A trustee was appointed and continued to operate the company's business. As late as January 1937, the trustee reported favorable progress in the negotiations with creditors on his plan of reorganization. Since it was found impossible to raise the additional funds necessary to effect *239 a reorganization, the stockholders, on February 12, 1937, adopted a resolution to dissolve. On April 21, 1937, a petition alleging insolvency and requesting the company to liquidate was filed with the court. A sale of the assets was ordered. The sale took place in December 1937. The proceeds realized were insufficient to discharge the company's liabilities. General creditors received about one per cent on their claims. There was nothing for distribution to the stockholders. The respondent urges that since the sale did not occur during the petitioner's fiscal year ended August 31, 1937, the loss was not suffered in the year claimed. We do not concur in this narrow view. Terminal was organized to develop Terminal Island. It was a somewhat speculative project. The value of its physical assets depended largely upon projected developments. These did not materialize. When the stockholders determined to liquidate, it must have been apparent to them that a forced sale of its assets would not produce sufficient funds to discharge its liabilities. We think that the adoption of the resolution to liquidate, on April 21, 1937, was the identifiable event fixing the worthlessness of the stock as *240 occurring in the taxable year. The petitioner was not required to await the sale under the circumstances. The second issue requires a decision as to petitioner's cost basis for the Terminal shares. The petitioner originally acquired 1,000 shares which, under a plan of recapitalization in May 1934, were exchanged for 100 shares. The 1,000 shares were acquired in March 1931, under an agreement of compromise of an indebtedness. Mr. W. A. Kohlhepp, the petitioner's vice president and general manager, at the time of his death was indebted to the petitioner in the total amount of $229,445.61. The debt arose through the purchase of a lot from the petitioner and the erection thereon of a house with funds of the petitioner and charged to Kohlhepp's account. The property had been conveyed by Kohlhepp to the Mawac Company. Since Kohlhepp's estate was insolvent the petitioner presented no claim against the estate. The petitioner, believing it had a valid claim against the Mawac Company, endeavored to collect the Kohlhepp indebtedness from that source. Negotiations ensued and in March 1931 a compromise settlement was reached. Under that settlement the Mawac Company transferred to the petitioner *241 certain real estate, promissory notes and the 1,000 shares of Terminal stock. In this settlement these were valued by the petitioner at an aggregate of $117,400 - the Terminal stock being valued at $50 per share. The latter value was based on the last two cash sales of Terminal shares. One sale had occurred in January 1927, when 120 shares were sold at $50 per unit. The other sale was in February 1929, when 1,500 shares were sold at $50.42 per share. In its income tax return for the fiscal year ended August 31, 1931, the petitioner claimed $112,045.61 as a bad debt deduction. This amount is the difference between the Kohlhepp debt of $229,445.61 and the assets which the petitioner valued at $117,400, transferred to the petitioner by the Mawac Company in the compromise settlement. The entire bad debt deduction was disallowed by the respondent. He premised his disallowance on the grounds that the debt was worthless and known to be so in 1929, and that no evidence had been submitted to substantiate the fair market value of the assets received on the settlement. The petitioner requested further hearing and filed a brief in support of the fair market value of the assets. As a result the *242 respondent no longer contested the amount of the claimed bad debt loss. Other adjustments were made, the effect of which was to create a net loss for income tax purposes. Thereupon, the petitioner was refunded the entire amount of its tax paid in the amount of $3,159.77. On the basis of these facts, the petitioner now contends that the respondent is estopped from contending that its cost basis for the 100 shares of Terminal stock is $500 per share, the comparable figure at which this same block of stock was then valued when it consisted of 1,000 shares. We think it is not necessary, however, to pass upon the question of estoppel. The evidence convinces us that the petitioner acted reasonably and in good faith in fixing $50 per share as the fair market value of the shares of Terminal upon their acquisition in 1931. That was their then value. The last two known cash sales of Terminal stock support that value. The balance sheet of Terminal indicates an earned surplus in excess of $300,000 for the fiscal year ended August 31, 1931. The capital of the company was then $1,000,000, represented by 10,000 shares of stock of a par value of $100, all of which was outstanding. It was a real estate *243 development company. The stock was unlisted and closely held by a few stockholders. The petitioner upon its own records used a cost basis of $50 per share. It used that basis in computing the amount of the bad debt loss claimed in its 1931 income tax return. That valuation was ultimately accepted by the respondent at that time. The respondent relies upon the fact that 120 shares of Terminal stock were sold in February 1932 at $8.33 per share, and that petitioner purchased 12 shares at $1 per share in 1935. Evidence surrounding these sales was offered. It appears that the 120 share lot was issued to a former civil engineer of the petitioner as compensation for services. The shares had been pledged as collateral to a bank. The liquidator of the bank sold the 120 shares for $1,000. The respondent had knowledge of this sale, although he did not utilize it, when passing upon the bad debt deduction claimed by the petitioner on its 1931 return which involved Terminal's shares. The 12 shares purchased by the petitioner in 1935 were taken over at that nominal consideration because the owner, who was the Mayor of Miami Beach, for political reasons desired to dispose of it. We do not regard *244 these sales under such circumstances as indicative of the fair market value of the stock in 1931 when petitioner accepted it in the settlement of that year. Heiner v. Crosby, 24 Fed. (2d) 191; Hazeltine Corporation v. Commissioner, 89 Fed. (2d) 513; Estate of Daniel Guggenheim, 39 B.T.A. 251, 293. We hold that the petitioner's cost basis with respect to the 100 shares of Terminal was $500 per share, and for the 12 shares, $1 per share. Accordingly, petitioner is entitled to deduct $50,012 as a loss in redetermining its income and excess-profits taxes for the fiscal year ending August 31, 1937. Revenue Act of 1936, sec. 23 (f). Decision will be entered for the petitioner. Footnotes
1. Revenue Act of 1936, sec. 23 (f); Treas. Reg. 94↩, art. 23 (o)-4.